# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **No. 3:12 CV 457** |
| **v.** | ) | |
| | ) | **(arising from 3:08 CR 170)** |
| **KENNETH ASKEW** | ) | |

## OPINION and ORDER

## I.    BACKGROUND

Following a jury trial, Kenneth Askew was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and possession of a modified firearm in violation of 26 U.S.C. §§ 5861(d) and 5845(a). The resulting sentence of 240 months imprisonment was affirmed on direct appeal. *United States v. Askew*, 384 F. App'x 504 (7th Cir. 2010). On June 25, 2012, defendant Kenneth Askew filed a motion pursuant to 28 U.S.C. § 2255 (DE # 1) followed by an amended motion on December 12, 2012 (DE # 12).

A motion under § 2255 allows a federal prisoner "in custody . . . claiming a right to be released" to attack his sentence on the grounds that it was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction . . ., or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255 ¶ 1. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." Rule 4, Rules Governing Section 2255 Proceedings for

the United States District Courts. The essence of Askew's attack on the legality of his

sentence is that he received ineffective assistance of counsel at trial and sentencing.

## II.   LEGAL STANDARD

The test to determine whether an attorney has delivered ineffective assistance

such that a defendant's Sixth Amendment right to counsel has been violated is set forth

in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test has two prongs. First,

the "defendant must show that the performance of counsel fell outside the 'range of

competence demanded of attorneys in criminal cases' –i.e., that it 'fell below an

objective standard of reasonableness.'" *Barrow v. Uchtman*, 398 F.3d 597, 603 (7th Cir.

2005) (quoting *Strickland*, 466 U.S. at 687). There is a strong presumption of competence.

*Id*.

Second, the defendant must show that he suffered prejudice as a result of his

counsel's ineffectiveness. *Id*. In other words, the defendant must demonstrate "a

reasonable probability that, *but for* counsel's unprofessional error, the result of the

proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The

court should deny an ineffective assistance of counsel claim if the defendant has made

an insufficient showing on either prong. *Id.* at 697.

## III.   DISCUSSION

### 1. Vindictive Prosecution

In his petition, Askew first asserts that his trial counsel was ineffective for failing

2

to pursue a claim of vindictive prosecution. (DE # 12 at 25-31.) Askew was originally charged in Wisconsin state court. (*Id.* at 26.) According to his petition, Askew's state court public defender presented Askew with a fax written by the state prosecutor informing Askew that if he did not plead guilty to his state claims the state prosecutor would turn the case over to the federal government. (*Id.*) Askew insisted on going to trial, however, and the state dropped the charges. (*Id.* at 26-27.) Askew was indicted in federal court a few days after that. (*See* 3:08-CR-170.) Thus, Askew's theory is that the federal government vindictively prosecuted him after he refused to plead guilty to the state charges in state court.  (*Id.* at 26-27.)

"The Constitution prohibits initiating a prosecution based *solely* on vindictiveness." *United States v. Segal*, 495 F.3d 826, 832 (7th Cir. 2007) (emphasis in original); *see also United States v. Benson*, 941 F.2d 598, 611 (7th Cir. 1991) ("The Fifth Amendment has been interpreted to prohibit the government from prosecuting a defendant because of some specific animus or ill will on the prosecutor's part, or to punish the defendant for exercising a legally protected statutory or constitutional right."), *mandate amended on other grounds by* 957 F.2d 301 (7th Cir. 1992). "The relevant inquiry for this claim is whether (1) the prosecutor harbored genuine animus; and (2) absent this motive, defendant would not have been prosecuted." *United States v. Monsoor*, 77 F.3d 1031, 1034 (7th Cir. 1996) (citations and quotation marks omitted). "Prosecution is considered vindictive where it was pursued in retaliation for the exercise of a protected statutory or constitutional right." *United States v. Cooper*, 461 F.3d

3

850, 856 (7th Cir. 2006) (citations and quotations omitted).

"To compel discovery on a defense of vindictive prosecution, the defendant must show a colorable basis for the claim. A colorable basis is some evidence tending to show the essential elements of the claim." *United States v. Heidecke*, 900 F.2d 1155, 1159 (7th Cir. 1990). "Thus, the defendant's claim of vindictive prosecution must rise beyond the level of unsupported allegations." *Id.* "To be entitled to a hearing on a claim of vindictive prosecution, the defendant must offer sufficient evidence to raise a reasonable doubt that the government acted properly in seeking the indictment." *Id.* at 1160. "This reasonable doubt standard is higher than the showing of a colorable claim that is essential to compel discovery." *Id.*

Askew's allegations hardly suggest that the federal prosecutor in this case harbored genuine animus towards him. *Segal*, 495 F.3d at 833 ("[A] defendant must affirmatively show that the prosecutor was motivated by animus . . . ."). The only argument that Askew even makes regarding animus is that the fact that he was indicted in federal court within a month of insisting on going to trial in state court is "highly suggestive of animus."[1] (DE # 12 at 30.) But the fact that the federal prosecutor brought

---

[1] Askew does point to additional facts that he contends support his claim, including that if his attorneys had investigated this claim it would have provided another defense at trial. (DE # 12 at 30-31.)  Askew contends that a state police officer had threatened to prosecute Rachel Garramone, his on and off girlfriend at whose home he was arrested, if she did not testify against Askew. (*Id.*) She did testify against Askew, while she was never prosecuted for possessing the gun. (*Id.*) The court fails to see how any of these alleged facts would support a finding that the federal prosecutor in this case was motivated by vindictiveness when he brought charges against Askew.

charges against Askew after the state prosecutor had dismissed charges against him is not indicative of animus. *United States v. Spears*, 159 F.3d 1081, 1087 (7th Cir. 1998) ("A federal prosecutor has broad discretion, and, while it is not unfettered, it is well within the decision making power to commence a prosecution after the completion of a state proceeding."); *see also Williams v. United States*, No. 3:10–CV–531, 2011 WL 2147212, at *10 (N.D. Ind. May 31, 2011) ("[The petitioner's] personal disagreement with the government's decision to indict him on drug and gun charges is insufficient to establish any prosecutorial animus or other wrongdoing by government officials."); *United States v. Thornton*, No. 09-cr-92, 2010 WL 56025, at *3 (W.D. Wis. Jan. 6, 2010) ("It was not vindictive for the government to bring new charges in a new court when Thornton chose to put the state prosecutor to the burden and uncertainty of a jury trial.").

"Where there are successive prosecutions by two sovereigns, as in this case, it is improbable that a realistic likelihood of vindictiveness exists." *Heidecke*, 900 F.2d at 1159; *see also Spears*, 159 F.3d at 1087 ("[I]t is very difficult to sustain a claim of vindictive prosecution where two separate sovereigns are involved."); *United States v. Robison*, 644 F.2d 1270, 1273 (9th Cir. 1981) ("[I]nvolvement of separate sovereigns tends to negate a vindictive prosecution claim[.]"). Here, the only thing Askew alleges is that the federal prosecutor brought charges against him within a short period of time after the state charges were dropped. This is insufficient to show a colorable basis for this claim. *United States v. Dickerson*, 975 F.2d 1245, 1251 (7th Cir. 1992); *Thornton*, 2010 WL 56025, at *3. Askew, therefore, is not entitled to discovery or a hearing on this claim,

5

and his trial attorneys were not ineffective for failing to pursue this matter. Askew's argument on this point therefore fails.

### 2. Failure to Investigate

Askew also argues that his attorneys were ineffective for failing to properly investigate his case. (DE # 12 at 32.) First, Askew argues that his attorneys only reviewed the recorded phone calls between Askew and Garramone that the government planned to offer at trial, but should have reviewed all of the calls because they contained evidence that would have aided Askew's defense. (*Id.* at 32-33.)

"When the alleged deficiency is a failure to investigate, the movant must provide the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (citations and quotations omitted). Here, Askew contends his attorneys should have reviewed these other phone calls because they would have showed:

> Rachel [Garramone] kept insisting over and over again that Ken had the shotgun until he just started going along with her in hope of getting back into her good graces so that she might change her mind and tell the truth, or at least not testify against him. There were calls where Mr. Askew was screaming and begging Rachel to tell the truth, and each time Rachel would reinforce her previous lies with more details to the point that Mr. Askew was wondering if he was crazy and actually did it.

(DE # 12 at 31-32.) Assuming that this sufficiently identifies what an investigation into the calls would have shown, this argument is still not persuasive. Askew's attorney highlighted portions of the phone calls where Askew denied ever having the gun and also insisted that Garramone tell the truth about what happened. (DE # 45 at 130, 142.)

Any further testimony on that issue would have been cumulative, and therefore, the omission of this evidence was not prejudicial. *United States v. Spears,* 159 F.3d 1081, 1085-86 (7th Cir. 1998) ("the absence of cumulative testimony cannot, as a matter of law, result in actual prejudice"). Askew's trial attorneys were not ineffective for failing to investigate this claim.

Next, Askew argues that his trial attorneys were ineffective for failing to properly investigate and introduce the DNA evidence in this case. (DE # 12 at 32-33.) There were four pieces of evidence tested for DNA in this case: the shells found in the shotgun, the shotgun handle, the shotgun pump handle, and the shells found in Askew's drawer at Garramone's residence. (3:08-cr-00170; DE # 21-1 at 1-2, 11-12.) The results of the DNA testing showed the following results:

- With regard to the shells recovered from the shotgun itself, the DNA testing showed that the DNA of three individuals was found on the shells, but that Askew was excluded as a contributor to the DNA found on the shells.
- With regard to the DNA recovered from the shotgun handle, there was DNA from at least three individuals found. Askew was ruled as a possible contributor, with the "probability of randomly selecting an unrelated individual that could have contributed to this mixture profile is approximately one in two thousand."
- With regard to the DNA recovered from the shotgun pump handle, there was DNA from at least three individuals found. Askew was ruled a possible contributor, with the "probability of randomly selecting an unrelated individual that could have contributed to this mixture profile is approximately one in 465."
- With regard to the DNA recovered from the shell in Askew's drawer, there was DNA from at least three individuals found. Askew was ruled a possible contributor, with the "probability of randomly selecting an unrelated individual that could have contributed to this mixture profile is approximately one in fifteen thousand."

(*Id.*)

Neither the government nor the defense introduced this evidence at trial. Nevertheless, Askew argues that his attorneys should have hired a DNA expert to inspect the gun and shells; should have introduced the DNA results at trial; should have called the technician who did the DNA analysis for the government to testify; and should have tested the shells against Garramone's DNA. (DE # 12 at 32-34.) In response, the government argues that none of these proposed courses of action would have benefitted Askew's defense because, on the whole, the DNA evidence tended to indicate that Askew had possessed the gun. (DE # 16 at 15.)

As the court noted above, when it comes to an attorney's decision making at trial, there is a strong presumption of competence, *Strickland,* 466 U.S. at 687, including a presumption that the challenged act was a sound strategic choice. *Id*. at 689. In this case, if the DNA evidence had been presented, it would have shown the possibility of Askew's DNA on the shotgun handle, the shotgun pump handle, and the shell found in his drawer at Garramone's house. It was an entirely reasonable strategy to think that admitting this evidence would do more harm than good. And decisions that appear to have been made pursuant to a viable strategy will not be second-guessed by a judge playing the role of "Monday-morning quarter-back." *Smith v. Gaetz*, 565 F.3d 346, 354 (7th Cir. 2009).

Askew's attorneys were not deficient with regard to the DNA evidence. Askew's claim on this issue therefore fails.

8

### 3. Failure to Object to the Presence of Multiple Law Enforcement Officers at Trial

Askew argues that he was prejudiced by the fact that two law enforcement officers – Officer Jeffrey Felton and ATF Special Agent Bill Bauduin – both sat at the government's table during the trial. (DE # 12 at 34.) During his opening statement, the federal prosecutor introduced both of these law enforcement officials to the jury:

> My name is Timothy O'Shea. I represent the United States through the United States Attorneys' Office for the Western District of Wisconsin. We've got two law enforcement officers involved in this case and they'll be helping me as well; in fact, Special Agent Jeff Felton from the Superior Police Department, and behind him with the tie is Special Agent Bill Baudin from the Bureau of Alcohol, Tobacco, Firearms and Explosives.

(Transcript of Jury Trial, Day 1, p. 31:13-20; DE # 44 at 31.)

Askew contends that his trial attorneys were ineffective for failing to object to the presence of multiple law enforcement officers at the government's table during trial. (DE # 12 at 34-5.) Specifically, Askew argues that the presence of two law enforcement officers at the government's table violated  Federal Rule of Evidence 615. (*Id.* at 35.) That rule reads as follows:

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:
>
> (a) a party who is a natural person;
>
> (b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney;
>
> (c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or
>
> (d) a person authorized by statute to be present.

9

FED. R. EVID. 615. "Rule 615 was designed to thwart witnesses from fashioning their testimony to that which has already been given and to help in detecting testimony that is less than truthful." *United States v. Gammon*, 961 F.2d 103, 105 (7th Cir. 1992). The Seventh Circuit recognizes that Rule 615 allows the government's case agent to testify despite having heard the testimony of other witnesses. *United States v. Berry*, 133 F.3d 1020, 1024 (7th Cir. 1998).

Askew's argument can be broken down into three parts. First, he argues that allowing two case agents at trial violates Rule 615. (DE # 12 at 34-35.) This argument is unpersuasive, however, because Rule 615 only applies to *witnesses*, Fed. R. Evid. 615, and only Officer Felton testified at trial. Agent Baudin did not. Rule 615, therefore, was not violated when the government had two case agents with it at trial. *United States v. Rhynes*, 218 F.3d 310, 316 (4th Cir. 2000) ("[Rule 615's] plain language relates only to 'witnesses,' and it serves only to exclude witnesses from the courtroom.") (en banc) (plurality opinion); *Cook v. Southwest Airlines Co.*, No. CV 01–1726, 2003 WL 25668023, at *2 (C.D. Cal. Oct. 28, 2003). Askew's trial attorneys were not ineffective to objecting to the presence of two case agents under Rule 615.

Next, Askew argues that the presence of two law enforcement officers at the government's table prejudiced him because "the officers' presence served only to impress the jury with the seriousness of the case and the Defendant's dangerousness." (DE # 12 at 36-37.) As the court discussed above, however, this did not violate Rule 615, and Askew's contention that the jury was somehow influenced by the presence of both

10

officers is nothing more than speculation, and insufficient to show prejudice. *United States v. Asubonteng*, 895 F.2d 424, 429 (7th Cir. 1990) (conclusory allegations cannot show prejudice).

Finally, Askew argues that his trial attorneys' failure to object to Officer Felton being at the government's table throughout trial resulted in Officer Felton being "able to conform his testimony" to the testimony of other witnesses. (DE # 12 at 37.) This argument is also unpersuasive. Rule 615 allows a case agent to sit through a trial and still testify after having heard all of the other witnesses' testimony. Fed. R. Evid. 615 (b); *see also Berry*, 133 F.3d at 1024. Askew's trial counsel was not ineffective for failing to object to Felton's testimony, and Askew's argument on this point therefore fails.

### 4. Improper Expert Testimony by Lay Witnesses

Askew next takes issue with some of Officer Felton's testimony. (DE # 12 at 36-37.) His argument here is not quite clear. He may be arguing that Officer Felton should not have been allowed to identify the voices heard on the recordings played at trial because he was a lay witness as to voice identification. (*Id.*) If this is indeed what Askew is arguing, this argument fails. *United States v. Recendiz*, 557 F.3d 511, 527 (7th Cir. 2009) ("[T]his court has previously stated that expert testimony is not required to authenticate a voice identification."); *see also* FED. R. EVID. 901.

Askew also appears to be arguing that Officer Felton should not have been allowed to testify as to the content of recordings: "Mr. Askew cannot understand why Officer Felton was permitted to give an unimpeded recitation of the excerpted

11

conversations he purportedly recorded and transcribed." (DE # 12 at 37-38.) After reviewing Officer Felton's testimony (DE # 45 at 18-58)[2], however, the court was unable to find any part of Officer Felton's testimony where he recited what was on the recorded conversations. While Officer Felton was testifying, the government played a series of recordings. (DE # 45 at 25-34.) Askew, however, has failed to direct the court to any part of the record where Officer Felton gave an "unimpeded recitation" of any recording. Askew's argument on this point therefore fails.

Askew next takes issue with the fact that Officer Felton testified that the shells found in the shotgun and the shell found in Askew's drawer in Garramone's house were "the same gauge, they appear to be the same manufacturer and the same shot size." (DE # 45 at 42) Askew argues that this was expert testimony which should have been objected to by his trial attorneys because Officer Felton did not qualify as an expert witness. (DE # 12 at 38-39.) In response, the government argues that Officer Felton was only giving lay testimony, and therefore, Askew's trial attorneys were not ineffective for failing to object to it.

Federal Rules of Evidence 701 and 702 address lay and expert testimony. Rule 701 states:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;

---

[2] Any reference to DE ## 44-46, will refer to those entries in case 3:08-CR-170.

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701. Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

"[L]ay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. Christian*, 673 F.3d 702, 709 (7th Cir. 2012) (citations omitted). "[A] law-enforcement officer's testimony is a lay opinion if it is limited to what he observed . . . or to other facts derived exclusively from [a] particular investigation." *Id.* (citations and quotations omitted). "On the other hand, an officer testifies as an expert when he brings the wealth of his experience as [an] officer to bear on those observations and ma[kes] connections for the jury based on that specialized knowledge." *Id.* (citations and quotations omitted).

13

Officer Felton's testimony that the shotgun shells were of the same gauge, size and manufacturer was based his observation of the exterior markings on the shells themselves. (DE # 45 at 42.) No scientific, technical, or specialized knowledge was required to read the information that was stamped on the shells and compare them side by side. The ability to make such a comparison is not beyond the realm of experience of a lay person who is generally familiar with firearms and ammunition. *Cf. United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (ability to assess whether certain firearms were collector's items was beyond the purview of a "lay person familiar with firearms in general"). As such, the testimony was properly admissible as lay opinion and Askew's attorneys were not deficient for failing to object.

Furthermore, even if the testimony did cross the line into expert testimony, that does not automatically mean that Askew's trial attorneys' performance was deficient for failing to object to the testimony. Had Askew's trial attorneys objected to this testimony, the government would have likely requested a *Daubert* hearing for Officer Felton or presented another ballistics expert. Given that this testimony was very likely to come in even with an objection, Askew's attorneys were not deficient for failing to object to this testimony. A lawyer has to pick his or her battles in front of a jury, and it was not unreasonable for Askew's attorneys to think that objecting to this testimony would do more harm than good. As noted earlier, decisions that appear to have been made pursuant to a viable strategy will not be second-guessed by a judge playing the role of "Monday-morning quarter-back." *Gaetz*, 565 F.3d at 354. Askew's argument on

14

this point therefore fails.

### 5. Inadequate Cross-Examination of Witnesses

Askew next argues that his trial attorneys failed to properly impeach government witnesses, and specifically, Rachel Garramone. (DE # 12 at 40.) Askew contends that his trial attorneys should have impeached Garramone with inconsistent testimony regarding the first time she saw the gun from a state hearing, the fact that Garramone may have realized she was being recorded when she spoke to Askew when he was in jail, and the possibility that the government agreed not to prosecute Garramone in exchange for her testimony against Askew. (*Id.* at 41-42.)

The problem with this argument, however, is that "deciding what questions to ask a prosecution witness on cross-examination is a matter of strategy[,]" *United States v. Jackson*, 546 F.3d 801, 814 (7th Cir. 2008), and plaintiff's counsel vigorously cross-examined Garramone at trial. Askew's counsel began by establishing Garramone's motive for framing Askew – that she was angry with Askew for cheating on her. (DE # 44 at 106-08.) Askew's counsel then moved on to highlight inconsistences in the testimony that Garramone was testifying to at trial compared to the testimony that she had previously given under oath and the fact that Garramone and O'Campo had plenty of opportunities to concoct a story prior to testifying at trial. (*Id.* at 108-11, 121-22.) Next, Askew's counsel questioned Garramone regarding her actions of the two nights in question, establishing that what she had done did not make a lot of sense, and also establishing that the information Garramone included in the police report she filed was

15

essentially what a police officer on scene told Garramone to write. (*Id.* at 112-15, 120, 123-24.) Finally, Askew's counsel highlighted these points in his closing argument. (DE # 45 at 129-150.)

Thus, the trial transcript establishes that Askew's attorney sufficiently and effectively cross-examined Garramone. Although Askew now believes that his attorney should have cross-examined Garramone in a different fashion, his attorney's decisions in this regard were a matter of strategy, and Askew cannot establish that his attorney's performance on this issue was deficient. Mr. Askew's argument on this point therefore fails.

### 6. *Failure to Object to Improper Closing Argument*

Askew also contends that his trial counsel were ineffective for failing to object to certain portions of the government attorney's closing argument. (DE # 12 at 45.) First, Askew appears to argue that his trial counsel should have objected to the prosecutor's reference to alleged facts that were unsupported by the record. (DE # 12 at 45- 46.)  This argument is unpersuasive. Even assuming that the facts Askew takes issue with were unsupported by the record, the court very clearly told the jurors prior to closing arguments that the attorneys' statements were not evidence. (DE # 45 at 102.) Juries are presumed to follow the instructions which the court gives them, and giving such instructions negates any potential prejudice in this case.  *Soltys v. Costello*, 520 F.3d 737, 744 (7th Cir. 2008).

Askew next takes issue with the fact that the government's attorney stated

during his closing that the jury could conclude that the gun was not Garramone's because the defense objected when the prosecution attempted to have Garramone attempt to load the gun, and stated that "[c]learly the defense didn't want to see you watch Garramone fumble around with those dummy rounds." (DE # 12 at 45-46; DE # 45 at 109.) The problem with this argument is that Askew's attorney *did object* to this statement, and the court sustained the objection. (DE # 45 at 109.) Askew's argument on this point is therefore unpersuasive because contradicted by the record.

Askew also argues that his trial attorneys were deficient for failing to object several statements that Askew contends were "fairly susceptible of being interpreted by the jury as a comment on the Defendant's right not to testify and impermissible burden shifting." (DE # 12 at 46.) Askew specifically takes issue with the following statements by the prosecutor during his trial:

> You may hear discussion about why Ms. Garramone didn't run to the house and you will hear defense counsel pick apart different parts of her testimony in prior proceedings. You know, use your own common sense. You know that Ms. Garramone testified basically to the same thing. She said the same thing to you as she said in the prior courts, the same thing, and we will talk about it in a minute, the same thing that she said to the defendant. And the defendant, we will talk about that at the end, did not deny what she said.

(DE # 45 at 110-11.)

> And he says, "It's not the real me," as if there is some other person, as if his behavior is excused if he has had a couple of beers. "That's not the real me."
>
> She says, "It was you."
>
> And he doesn't deny it. What does he say? He offers a lame excuse. He says, "I'm stressed out. I was stressed out," when he had the perfect opportunity to say, you know, "You got it all wrong. You got the wrong guy. You are

17

trying to frame me." He doesn't say any of that, does he? He says, "I was stressed out."

(*Id.* at 115-16.)

> The third reason you know that it's the defendant's gun and nobody else's is all the people I have talked about before are all corroborated – Officer Lear, O'Campo, Mehtala -- are all corroborated by Garramone. As we will see in a minute, on every crucial point Ms. Garramone said, everything she said to you she said first to the defendant and the defendant did not deny it.

(*Id.* at 120.)

> The seventh reason, and final reason, you know it's defendant's gun is because, as I say, everything the defendant said to you -- I'm sorry -- everything Ms. Garramone says she said to the defendant first and he did not deny it.

> Listen carefully. You know, when you are back there, the recordings, you will have those with you. But, you know, Ms. Garramone told you she was terrified. She told him that first. She told you the defendant blocked her way. She told the defendant first. She told you the defendant had a gun. Well, she told him that first, too. And what did the defendant do? He did not deny it. Let's look real quick at Government Exhibit 8B.

> She says, "I was scared to death for real." And he doesn't deny it that he scared her, rather he just continues to play on her emotions.

> Turning your attention to Government Exhibit 9B, she said she was terrified, terrified.

> He says, "I know. I'm sorry about that. I can't express how sorry I am about it."

> ***

> She says, "Worse, the day before" -- but if you go down a little bit -- "the kids didn't see it."

> "It's not me though for real."

> She says, "Yeah, it was you. I know it's not you, but you did it, you know?"

18

What does he say? "Yeah. Yeah."

The defendant knows he did it.

She says, "How do you erase it out of your head?"

Next, 14B. And again, what she said to you, she said to him first. He did not deny it.

She said, "You could have killed us all. The gun could have gone off any fucking minute. While the kids are right there, you are strangling me. They are watching that."

He doesn't deny it.

(*Id.* at 125-26.)

And then again, some metaphysical hand, it's not him, it's an out-of-body experience. He comes up with a lame, "It's not the real me."

She is not going to let him off the hook this time, is she?

She says, "No, it was you."

And he has got a lame excuse, not a denial, "I was stressed out."

Then at the end she says, "Look, maybe you didn't mean it. You did it. It was nobody else. It was you."

What does he say? "I know."

It was the defendant, Ken Askew, sitting over there. He does know. He does know and now you know.

(*Id.* at 128.)

Askew appears to contend that these comments constituted both prosecutorial misconduct and an improper comment on his refusal to testify. "In reviewing a claim of prosecutorial misconduct, we consider first whether the challenged remark by the

19

prosecutor was improper, and second, whether it prejudiced the defendant." *United States v. Dvorkin*, 799 F.3d 867, 884 (7th Cir. 2015) (citations and quotations omitted). "A prosecutorial comment during closing arguments is improper if it is "aimed at inflaming the passions of the jury." *Id.* The comments that Askew complains of here were not improper because not inflammatory and aimed at jurors' passions; rather, they were merely highlighting evidence that had already been admitted. But, even assuming the comments were improper, Askew was not prejudiced by them – the court informed the jury prior to closing arguments that the statements of attorneys are not evidence and followed it up with a jury instruction that said the same thing. (3:08-cr-00170, DE # 40 at 7); *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 732 (7th Cir. 1999) ("Moreover, any potential prejudice to Jones by defense counsel's argument that Jones was attempting to 'trick' the jury was lessened considerably by the fact that the district court instructed the jury that statements and arguments made by counsel were not to be considered evidence and that the jury should base its verdict solely on the evidence admitted in the case. We have repeatedly found that jury instructions of this sort mitigate any prejudicial effect of potentially improper remarks made by counsel during closing argument."). Askew's argument on this point therefore fails, and his attorneys were not deficient for failing to object to the statements.

Askew, however, also contends that these comments, quoted above, were an improper comment on Askew's refusal to testify. "The law is most clear that any *indirect* commentary on the defendant's failure to testify, including references to

'uncontradicted' or 'uncontested' testimony, in order to be improper, must (1) consist of language and words that are '*manifestly intended*' to be a comment on the defendant's decision not to take the stand, when analyzed in the context in which they are used, or (2) be of such a character that the jury would *naturally and necessarily* take it to be a comment on the defendant's silence." *United States v. Harris*, 271 F.3d 690, 700 (7th Cir. 2001) (citations and quotations omitted) (emphasis in original). Here, the prosecutor's comments that Askew takes issue with were not direct commentary on his failure to testify, and Askew does not appear to contend that they were. (DE # 12 at 46-47.)

When the quotes above are read in context, it becomes very clear that the prosecutor was not commenting on Askew's failure to testify at trial, but was instead commenting on Askew's failure to deny Garramone's accusations regarding the gun during the phone conversations Askew and Garramone had while Askew was in jail, which had been admitted into evidence. Thus, these comments neither consisted of words "manifestly intended" to be a comment on Askew's failure to testify nor were of a character that the jury "naturally and necessarily" took them to be a comment on Askew's failure to testify. *Harris*, 271 F.3d at 700. Askew's argument on this point therefore fails, and his attorneys were not deficient for failing to object to these statements.[3]

Next, Askew argues that his attorneys were deficient for failing to object to

---

[3] Askew makes this same argument again later in his brief, and it fails for the same reasons stated above. (DE # 12 at 48.)

several more statements during the prosecutor's closing argument. (DE # 12 at 47-48.) First, Askew takes issue with the prosecutor's statement that Garramone had no way to obtain the gun. (*Id.*; DE # 45 at 111). Askew contends that there was no evidence admitted at trial indicating Garramone's ability to obtain access to the gun. (DE # 12 at 47-48.) This argument fails. Even assuming that there was no such evidence presented at trial, the court made very clear, multiple times, that the attorneys' statements during closing arguments were not evidence. *Lincoln Elec. Co.*, 188 F.3d at 732. Such an instruction mitigates the potential prejudice of an improper argument. *Soltys*, 520 F.3d at 744. Therefore, Askew's attorneys were not deficient for failing to object to these statements.

Askew also contends that his attorneys should have objected to the prosecutor's statement that Garramone had no motive to bring the gun into her home. (DE # 12 at 47-48; DE # 45 at 111.) Askew points out that there was evidence supporting the theory that Garramone wanted to frame him; namely that Askew had been cheating on Garramone. (DE # 12 at 47-48.) Once again, however, the court told the jury that the attorneys' statements at trial were not evidence. *Lincoln Elec. Co.*, 188 F.3d at 732. Additionally, Askew's trial attorneys pointed out Garramone's motive in his closing, (DE # 45 at 129), having already cross-examined her on this very point (DE # 44 at 107).This argument fails, and Askew's attorneys were not deficient for failing to object to this statement.

Askew next argues that his attorneys should have objected to the prosecutor's

editorializing in his closing arguments regarding Askew's theory of defense. (DE # 12 at

48-49.) Askew specifically takes issue with the following statements made by the

government attorney during his closing arguments regarding defendant's frame

defense:

> Think about what defense, I anticipate, will be suggesting here, that O'Campo
> and Garramone are involved -- at least Garramone, maybe O'Campo -- are
> involved in some intricate Machiavellian scheme to frame the defendant. And
> they are so good at it, these two, that they have duped the Superior Police
> Department and the federal government. I respectfully submit to you, that
> doesn't make a lot of sense.

(DE # 45 at 118-19.)

> You know that the defense is, with all due respect, grasping for straws. That is
> far-fetched.

(*Id.* at 112.)

> Now, as [one of defendant's lawyers] was talking, I thought of an incident
> that happened with my father many years ago, 35 years ago, when I was a
> little kid.
>
> My father was a policeman and we went on vacation. We were in a city
> unfamiliar to my dad. We went the wrong way on a one-way street and he
> got pulled over. And he was a cop getting pulled over by cops.
>
> My dad -- this was a long time ago. This is what people did, I suppose, back
> then -- he took out his badge. And he is talking to these cops, basically trying
> to talk his way out of a ticket, right?
>
> The cop looks at my dad -- there are seven kids in the car -- the cop looks at
> my dad and says, "Look,you can't bullshit the bullshitters."
>
> ***
>
> I would respectfully submit that that is what is going on here. If there was a
> nicer way to say it, I would say it, but I'm not -- what the defense counsel
> said, you know, based on the facts, it is not true. You know it and the

23

Defendant Ken Askew knows it.

(*Id.* at 151-52.)

>And Mehtala, even if somehow O'Campo and Garramone are in some intricate scheme, Mehtala said she has never talked to Garramone about this. She is a 16-year-old. She is going to Superior High School. I would respectfully submit to you, if the idea is that she is involved in a scheme, your collective legs are being tugged.

(*Id.* at 119-20.)

Defendant argues that this characterization of his defense was improper and his attorney was therefore ineffective for failing to object to these statements at trial:

>Characterization of a defense as fabricated, standing alone, is no more improper than characterizing a witness as a liar. Compare, United States v. Isaacs, supra, 493 F.2d 1124, 1166. But where the terms "fabricated" or "lies" are used repeatedly to the point of excessiveness, the line between the "undignified and intemperate" (Berger v. United States, 295 U.S. 78, 85, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)) and the hard or harsh but fair may be crossed with a resultant impairment of "the calm and detached search for truth to which a criminal trial should aspire." (United States v. Spain, 536 F.2d 170, 175 (7th Cir. 1976)).

*United States v. Craig*, 573 F.2d 455, 494 (7th Cir. 1977).

The court does not believe that the prosecutor's comments above were excessive. Defendant's entire theory of defense was that he had been framed by O'Campo and Garramone, and the government had no choice but to discredit the frame theory of defense. *United States v. Chaimson*, 760 F.2d 798, 811 (7th Cir. 1985). These comments were not improper, as they were not "aimed at inflaming the passions of the jury." *United States v. Dvorkin*, 799 F.3d 867, 884 (7th Cir. 2015) (citations and quotations omitted). Defendant's arguments on this point therefore fail, and his attorneys were not

24

ineffective by failing to object to these statements.

### 7. Erroneous Sentencing Guideline Calculation

Askew next argues that his attorney was ineffective for failing to make a number of objections at sentencing. (DE # 12 at 50-51.) His first objection relates to a three-level enhancement for a 1993 conviction for fifth degree possession of crack cocaine. (*Id.*) He argues that the enhancement was improperly applied because the conviction occurred more than 15 years prior to the present case. (*Id.*) His base offense level was increased by three levels pursuant to § 4A1.1(a) of the United States Sentencing Guidelines. (Presentence Investigation Report, DE # 46 at ¶ 35.) That section applies to "each sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a). However, such a sentence is only counted if it is imposed within 15 years of the instant offense or if the sentence "resulted in the defendant being incarcerated during any part of such fifteen-year period." U.S.S.G. § 4A1.2(e).

To begin, a review of Askew's criminal history establishes that the length of his imprisonment satisfies the minimum requirement of § 4A1.1(a). Askew's original sentence was imposed on November 23, 1993. (DE # 46 at ¶ 35.) He would later be resentenced on April 13, 1994, after admitting to a probation violation. (*Id.*) He was remanded into custody on his new sentence and was also given credit for 165 days of time served. (*Id.*) He served another 273 days in custody before being released and discharged on January 11, 1995. (*Id.*) In situations where parole is revoked, the guidelines instruct courts to "add the original term of imprisonment to any term of

imprisonment imposed upon revocation." U.S.S.G. § 4A1.2(k)(1). Thus by combining 273 days of imprisonment with the 165 days with which he was credited at sentencing, the court finds that Askew's imprisonment totaled 438 days, exceeding the minimum requirement of § 4A1.1(a).

Likewise, the period between when his sentence was imposed and July 8, 2008, when he committed the instant offense was only 14 years, 7 months, and 15 days. Furthermore, Askew's period of imprisonment came to an end only 13 years, 5 months, and 27 days before July 8, 2008. As such his conviction falls within the 15 year requirement of § 4A1.2(e). The sentencing guideline was properly applied in his case, and Askew cannot establish ineffective assistance of counsel for failing to raise this objection at sentencing.

Askew next argues that his trial counsel was ineffective for failing to object to a one-level enhancement that was based on a conviction for interfering with a transit operator. (DE # 12 at 50-51). Askew believes that this was not a misdemeanor conviction but was an ordinance violation and thus would not count against him under U.S.S.G. § 4A1.2(c)(2). (*Id.*) Askew presents no further information to support his belief that this was not a misdemeanor as indicated in the Presentence Investigation Report. However, in either case, his argument fails because the exception he cites for ordinance violations clearly excludes "those violations that are also violations under state criminal law." U.S.S.G. § 4A1.2(c)(2). The crime of which he was convicted, unlawful interference with a transit operator, is an aggravated misdemeanor according to Minnesota Criminal

Statutes. Minn. Stat. 609.855, subd 2(a). Thus, even if Askew's belief is correct, it nonetheless does not fall under the exception he cites. Here too, because the sentencing guidelines were properly applied in his case, he cannot show ineffective assistance of counsel.

Third, Askew takes exception to his counsel's failure to object a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. (DE # 12 at 51-52.) Askew argues that the audio recordings of his conversations, by themselves, were insufficient to establish the factual basis of this enhancement. (*Id.*) He points out that no live witnesses were introduced to testify as to the actions they took in response to these conversations. (*Id.*) He adds that it is "entirely possible" that his statements were "wholly unrelated to the trial" rather than attempts to obstruct justice. (*Id.*) Furthermore he argues that his counsel was deficient for failing to listen to the entire catalogue of recordings which might have yielded broader, even exculpatory, context to the recordings that were introduced against him. (DE # 25 at 16-17.)

The conduct covered under the § 3C1.1 enhancement includes not just actual obstruction of investigation, prosecution or sentencing but also attempts to do the same. The guideline commentary provides as an example, "threatening, intimidating, or otherwise unlawfully influencing a . . . witness, . . . directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1 cmt. 4. Thus, a defendant need not actually succeed in obstructing in order to qualify for the enhancement. *United States v. Ewing*, 129 F.3d 430, 435 (7th Cir. 1997). Rather, there are ample facts to support the conclusion that Askew

directly and indirectly *attempted* to intimidate and induce the government's witness, Ms. Garramone, to either lie or not testify against him. (*See* DE # 46 at ¶¶ 16-17, summarizing the content of the recordings: "[T]he defendant telephoned Garramone from jail and encouraged her to commit perjury and say that the shotgun was hers . . . alternatively directed her to 'plead the fifth' . . . [and also directed an associate named 'Big Bro'] 'to put a muzzle on that bitch.'") The court heard all of the recordings that were admitted at trial and was able to reach a conclusion as to the subject matter and intention of Askew's statements as they related to the obstruction enhancement. Askew cannot meet his burden of showing that his counsel was deficient by merely pointing out the possible ambiguity of his phrases and the chance that more exculpatory sound bytes could have been discovered in the remaining tapes. *Daniels v. United States,* 54 F.3d 290, 293 (7th Cir. 1995) ("a hearing is not necessary if the petitioner makes conclusory or speculative allegations rather than specific factual allegations"); *Williams v. Washington*, 59 F.3d 673, 684 (7th Cir. 1995) ("failure to investigate cannot be used as a substitute for proof of prejudice"). The enhancement was properly applied in this case. Therefore counsel was not ineffective for failing to make an objection.

Finally Askew argues that his trial counsel should have objected to the inclusion of a four-level enhancement because Askew used or possessed a firearm in connection with another felony offense. (DE # 12 at 52.) The other felony offenses in question arose out of the same incident that led to the present charges. Specifically, the Presentence Investigation Report notes that when Askew was initially arrested in Douglas County,

Wisconsin, he was charged with two felony counts of recklessly endangering safety and one felony count of false imprisonment.  (DE # 46 at ¶ 23.) Those charges would later be dismissed in lieu of federal prosecution. (*Id.*) Askew argues that this enhancement was improper because he was never convicted of these offenses and the jury did not make specific findings as to these offenses. (DE # 25 at 18.)

U.S.S.G. § 2K2.1(b)(6) provides for a four-level enhancement if a defendant "used or possessed any firearm or ammunition in connection with another felony offense." Application Note 14(C) defines "another felony offense" as "any Federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, *regardless of whether a criminal charge was brought, or a conviction obtained*." (Emphasis added). Thus, by the plain language of the sentencing guidelines, this argument must fail.[4]

Askew also argues that the enhancement violates the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the facts of the other felony offenses were not found by a jury. (DE # 25 at 18.) *Apprendi* established that any facts which are used to increase a criminal defendant's maximum permissible sentence must be established

---

[4] It is no issue that the other felony offenses in question arose out of the same incident in which Askew was arrested. The criminal conduct for false imprisonment and reckless endangerment charges is sufficiently distinct from gun possession charges that they are properly considered separate felony offenses. *See United States v. Hill*, 563 F.3d 572, 581-82 (7th Cir. 2009) (applying enhancement for a felon in possession who obtained the gun by committing a burglary); *United States v. Purifoy*, 326 F.3d 879, 881 (7th Cir. 2003) (highlighting the distinction between mere possession and actual use of a weapon, holding that the enhancement was properly applied for felon in possession of a firearm who committed a felony assault by pointing the weapon at the arresting officer).

beyond a reasonable doubt to the trier of fact. 530 U.S. at 490, 120 S. Ct. 2348; *Crayton v. United States,* 799 F.3d 623, 623 (7th Cir. 2015), *cert. denied*, No. 15-360, 2015 WL 5587913 (U.S. Nov. 2, 2015).[5] Askew's sentence does not exceed the statutory maximum for the two counts of which he was convicted. The crimes of felon in possession of a firearm (18 U.S.C. § 922(g)(1)) and possession of a modified firearm (26 U.S.C. § 5861(d) each carry a maximum sentence of 120 months imprisonment according to 18 U.S.C. § 924(a)(2) and 26 U.S.C. § 5871, respectively. Askew's sentence of 240 months imprisonment represents the maximum sentence of both counts served consecutively. (3:08-CR-170, DE # 59 at 14.) His sentence does not exceed the statutory maximum range. Therefore his appeal to *Apprendi* is inapposite.

At trial, Ms. Garramone testified that Askew was armed with the shotgun and blocking the doorway to prevent her and her children from fleeing the home. (DE # 44 at 100-01.) Ms. Garramone began to physically struggle with Askew in the doorway while one child was able to escape (*Id.*) With her two remaining children, she was able to escape out the back door as police were arriving on scene. (*Id.* at 102-03.) This testimony supplies the basis to find that Askew both used a weapon and committed the offense of false imprisonment in that he intentionally confined or restrained Ms. Garramone and her children without their consent, knowing that he had no lawful

---

[5] The Supreme Court later expanded this holding to facts which increase the mandatory minimum of a sentencing range as well. *Alleyne v. United States,* 133 S. Ct. 2151, 2155 (2013). However, as Askew concedes, (DE # 25 at 18 n.4), the rule is not retroactively applicable, and therefore the court does not need to consider its application in this case. *Crayton*, 799 F.3d at 625.

authority to do so. Wis. Stat. § 940.30; *see also State v. Burroughs,* 640 N.W.2d 190, 195-96 (Wis. Ct. App. 2003) (analyzing the element of confinement under § 940.30 when evaluating the related charge of kidnapping). This is but one of the felony offenses that supplied the basis for the § 2K2.1(b)(6) enhancement. As such, Askew cannot establish that the enhancement was wrongly applied to him and that, by extension, his counsel was deficient for failing to raise an objection.

### 8. Cumulative Error

Lastly, Askew argues that the cumulative errors of his attorney, taken as a whole, deprived him of his right to a fair trial. (DE # 12 at 53.) In addition to reprising the main contentions which the court has already addressed, Askew contends that his attorney's trial strategy was not fully developed. (*Id.*) He faults counsel for not presenting evidence or calling any witnesses and for advising Askew that he should not testify in light of his impeachable felony offenses. (*Id.*)

Even if a given error is not individually prejudicial, a series of errors may constitute a "pattern of ineffective assistance" under *Strickland. Goodman v. Bertrand,* 467 F.3d 1022, 1030 (7th Cir. 2006). Nonetheless, a petitioner must still overcome the presumption that, under the circumstances, counsel's action "might be considered sound strategy." *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

As discussed *supra*, the court has found Askew's main arguments for inteffective assistance of counsel to be without merit and therefore they fail to support a claim of

cumulative error. *United States v. Guerrero*, 938 F.2d 725, 731 (7th Cir. 1991). The remainder of Askew's cumulative error argument amounts to second-guessing his attorney's decisions that seem to have been made pursuant to a viable strategy. *Gaetz*, 565 F.3d at 354. None of the decisions that Askew finds fault with are erroneous in and of themselves. *See United States v. Curtis,* 742 F.2d 1070, 1074 (7th Cir. 1984) ("a tactical decision not to call a particular witness or seek to introduce a particular piece of evidence, if made after adequate investigation and based upon counsel's reasonable determination that damage to his client's case can thereby be avoided, cannot form the basis for a finding of ineffective assistance of counsel."); *Rodriguez v. United States*, 286 F.3d 972, 985-86 (7th Cir. 2002) (advice to not testify because of impeachable felony background not ineffective assistance of counsel).

Furthermore, Askew offers no specific claims about what testimony or evidence should have been elicited and how it would have affected the outcome of his trial. Such conclusory statements cannot establish prejudice. *Asubonteng*, 895 F.2d at 429. Askew fails to demonstrate that any cumulative errors amounted to ineffective assistance of counsel.

## IV. CONCLUSION

For the reasons explained in this memorandum, the court finds that defendant Askew has not demonstrated that his conviction was obtained in violation of his Sixth Amendment right to effective assistance of counsel. His § 2255 motion (DE # 12) is

therefore **DENIED**. The clerk is directed to **ENTER FINAL JUDGMENT** stating that the corresponding civil cause, 3:12 CV 457, is **DISMISSED WITH PREJUDICE.**

Pursuant to Rule 11 of the Rules Governing 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A court should issue a certificate of appealability ("COA") only if the movant has made a substantial showing of the denial of a constitutional right, that is, that reasonable jurists could debate whether the district court correctly resolved the issues or would conclude that those issues are adequate to deserve further proceedings. 28 U.S.C. § 2255 ¶4; 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell* , 537 U.S. 322, 337-38 (2003). The court has thoroughly discussed why it finds each ground for relief advanced by Askew to be wholly without merit. The court believes that no reasonable jurist could doubt that this court resolved the issues correctly, or conclude that any of them deserve further proceedings. Accordingly, the court **DENIES** the issuance of a COA.

**SO ORDERED.**

Date: January 26, 2016

 s/ James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT